IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Sherrie J. Terry, | ) | Civil Action No.  8:14-cv-04641-MGL-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

In May 2007, Plaintiff filed an application for DIB, alleging an onset of disability date of March 26, 2004.[2]  [R. 141–43.]  The claim was denied initially and on  reconsideration by the Social Security Administration ("the Administration").  [R. 104–09, 114–16.]  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on September 11, 2009, ALJ Walter C. Herin, Jr., conducted a de novo hearing on Plaintiff's claims.  [R.

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Plaintiff also applied for supplemental security income but was deemed ineligible due to her income.  [R. 76–79.]

19–63.]  The ALJ issued a decision on September 30, 2009 finding Plaintiff not disabled. [R. 12–18.]  Plaintiff requested Appeals Council review of the ALJ's decision [R. 8] but the Council declined [R. 1–6].  Plaintiff then filed an action for judicial review in this Court, Civil Action No. 8:11-01473-MGL, and on January 24, 2013, the Court remanded the case to the Commissioner for a proper credibility determination with respect to Plaintiff's pain complaints.  [Civil Action No. 8:11-01473-MGL, Docket Entry Nos. 41, 42.]  On April 29, 2013, pursuant to the Order of the Court, the Appeals Council remanded Plaintiff's case to an ALJ [R. 625–28], and on April 1, 2014, ALJ Herin conducted a second hearing on Plaintiff's claims [R. 527–69].

The ALJ issued a decision on April 24, 2014, finding Plaintiff was not disabled under the Social Security Act ("the Act").  [R. 511–26.]  At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Act on June 30, 2004, and had not engaged in substantial gainful activity during the period from her alleged onset date of March 26, 2004 through her date last insured of June 30, 2004.  [R. 516, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: multiple chronic ventral and incisional hernias, status post multiple surgical reductions, and obesity.  [R. 516, Finding 3.]  The ALJ also found Plaintiff had the following non-severe impairments: gastroesophageal reflux disease ("GERD"), allergic rhinitis, non-insulin dependent diabetes mellitus, hypothyroidism, breast abscess and infection, and depression.  [R. 517.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart

P, Appendix 1.  [R. 519, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the

ALJ found Plaintiff retained the following residual functional capacity ("RFC")

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a).  Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for at least 6 hours in an 8-hour day, with no standing and/or walking over an aggregate of two hours in an eight-hour workday.  The claimant cannot push or pull over ten pounds with the bilateral upper extremities.  he claimant can occasionally stoop, crouch, kneel, balance and climb stairs and ramps.  The claimant cannot crawl or climb ladders, ropes, or scaffolds.

[R. 519, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff

was unable to perform any of her past relevant work.  [R.525, Finding 6.]  However, based

on her age, education, work experience, RFC, and testimony of a vocational expert ("VE"),

there were jobs that existed in significant numbers in the national economy that Plaintiff

coiuld perform.  [R. 525, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under

a disability, as defined in the Act, at any time from March 26, 2004, the alleged onset date,

through June 30, 2004, the date last insured.  [R. 526, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council

declined.  [R. 486–489. ]  Plaintiff filed this action for judicial review on December 8, 2014.

[Doc. 1.]

3

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be remanded because the ALJ erred in rejecting Plaintiff's reports of disabling pain and made clearly erroneous factual findings; failed to give an appropriate explanation for the RFC finding after acknowledging Plaintiff's condition worsened; and improperly rejected the opinion of Dr. Elton.  [Doc. 14.]

The Commissioner, on the other hand, contends the decision is supported by substantial evidence and that the ALJ followed controlling regulations in evaluating the credibility of Plaintiff's subjective complaints; properly considered Plaintiff's RFC; and followed controlling regulations in evaluating the opinion evidence.  [Doc. 15.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

6

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.**     ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929,

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

13

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

14

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Credibility

Plaintiff argues the ALJ made clearly erroneous factual findings in rejecting Plaintiff's complaints of disabling pain. [Doc. 14 at 3–18.] The Commissioner contends the ALJ followed the controlling regulations in evaluating Plaintiff's credibility. [Doc. 15 at 6–10.]

The determination of whether a person is disabled by pain or other symptoms is a two-step process. First, the ALJ must determine whether objective medical evidence

shows the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. *Craig*, 76 F.3d at 593, 595. Only after a claimant makes this threshold showing is the ALJ obligated to evaluate the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work. *Id.* Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. § 416.929(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's

credibility, the court must uphold the ALJ's determination.  *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).  Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."  *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F.Supp. 776 (E.D. Va. 1976)).

### *The ALJ's Credibility Determination*

At step one of the two-step process, the ALJ confirmed the presence of objective medical evidence showing the existence of medical impairments which could reasonably be expected to produce the pain or other symptoms alleged by Plaintiff.  [R. 520.]  Next, the ALJ moved on to the step two analysis, finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms during the relevant time period were not entirely credible.  [*Id.*]  The ALJ explained as follows:

> Despite the history of extensive abdominal hernia repair, the record reflected that during the short period within which the claimant must allege disability prior to her date last insured, the claimant's abdominal symptoms were stable.  In illustration, on February 20, 2004, acutely prior to the alleged onset date, a diagnostic study of the abdomen noted the claimant's prior hysterectomy, but was otherwise unremarkable.  Notably, there was no mention of any hernia (Exhibit 12F/20-21).  Moreover, primary care treatment records dated March 18, 2004 reported that the claimant requested a plastic surgeon consult secondary to a skin flap; however, the claimant did not complain of pain (Exhibit 13F/37).  Physical examination revealed a skin flap in the lower abdominal region and an obese abdomen.  In fact, primary care treatment records indicated that during this relevant period, the claimant was not on any pain medications (Exhibit 14F/6).  Similarly, on follow

19

up on April 29, 2004, the claimant inquired into the status of the plastic surgery consult, but did not mention any abdominal pain. Clinically, it was reported that the claimant's abdomen was soft, flat, and non-tender (Exhibit 13F/27). The assessment/plan portions of these treatment notes failed to list hernia or indicate a consult for hernia reduction was needed (Exhibit 13F/37). During the remainder of the relevant period of alleged disability, primary care treatment records were unremarkable, indicating little physical findings and routine medication refills. Overall, these records support that during the period of relevant alleged disability, the claimant's abdominal symptoms were stable.

. . . .

In assessing the claimant's credibility, I note that despite the extensive testimony to relate an August 2004 surgery back to the period prior to the date last insured, the treatment records are not supportive of such. Specifically, the claimant stated that she was continually trying to get surgery for a hernia during the relevant period of alleged disability, but she did not have the funds. In addition, she noted that her treating surgeon would not perform any further surgery until a breast abscess cleared. Furthermore, the claimant testified specifically that during the relevant period of disability, she complained to the free clinic and Dr. Phillips multiple times regarding the associated hernia pain going up her body, but the surgeon insisted the breast infection clear up before any additional surgery. Overall, the claimant endorsed that the surgery in August 2004 was merely delayed secondary to these factors and was actually needed during the relevant period of alleged disability. However, after a thorough analysis of the medical record during this period, I find this was not an accurate representation of the events leading up to the August 2004 surgery. In fact, the clinic records failed to reflect any reports of abdominal pain during this relevant period. The claimant's inquiries were with regard to getting a plastic surgery consultation for a lower abdominal skin flap/panus (Exhibit 13F/36-37). This was consistent with the February 2004 radiological study that was negative for any hernias in the abdomen or pelvic region (Exhibit 12F/20-21).

The record also failed to reflect any treatment records from a treating general surgeon to support the claimant's reports of reported pain and needed abdominal surgery secondary to a

20

recurrent hernia. In fact, there were no treatment records from a general surgeon leading up to the claimant's August 2004 surgery. This failed to support the claimant's allegations that a hernia repair was needed during the relevant period of disability, but was postponed secondary to a breast infection. The record only reflected the hospital's operative report of the August 2004 surgery (Exhibit 7F). This report noted that the claimant's preoperative diagnosis was biliary colic and ventral hernia. It was indicated that a laparoscopic cholecystectomy was performed. In determining where to place the Hasson trocar, the previous hernia surgeries were considered. Notably, the liver and gallbladder were generally free from intraperitoneal adhesions. The gallbladder was removed via the trocar incision (Exhibit 7F/3-4). The operative note thereafter explained that the ventral hernia was actually three small ventral hernia connected by fascial bridges. The bridges were divided so one larger ventral hernia remained. This was addressed with mesh secured and the fascial edges were brought together. There were no complications and the claimant tolerated the procedure well (Exhibit 7F/4). Overall, the record failed to support these hernias were the primary reason for the surgery or these small hernias resulted in significant functional limitations.

The lack of medical evidence to confirm a hernia requiring surgical intervention during the relevant period of alleged disability was also supported by the claimant's recurrent requests for a plastic surgeon consult. This was consistent with remote records noting a "fairly substantial panus" that was not related to any hernias (Exhibit 25F/2). A prior treating general surgeon noted that the panniculus had some weight to it, and when it was elevated she noted her pain improved. However, it was reported at that time, that despite the claimant's complaints of abdominal pain, radiological studies and clinical examination were inconsistent with recurrent hernias (Exhibit 25F/3-5). I note that while this record was prior to the relevant date of disability, it does establish that the claimant had a history of a panniculus that she was interested in having removed, and prior reports of pain without any palpable or clinical evidence of hernias.

The claimant also testified to little to no activity. Specifically, she stated that she spent all her time in the recliner or in the bed. However, the record failed to reflect the claimant reported this level of inactivity to any treating physician.

21

Moreover, physical and clinical findings during this period failed to note any muscle atrophy, which one would expect with such inactivity (Exhibit 13F/36-37).  Similarly, the claimant testified that she presented to the emergency room secondary to abdominal pain during this period of relevant disability. However, there was no evidence of emergency room treatment during this short period.  As noted above, the claimant was not on any pain medication during this time (Exhibit 14F/6). Despite the claimant's testimony, the record failed to support the claimant's allegations of such severe abdominal pain with a progressively enlarging hernia, which severely limited movement and activities of daily living.  These inconsistencies further detract from the claimant's credibility.

In addition, I note an inconsistent work history.  The earnings record reflected a significant number of years with no earning, even prior to the alleged onset date (Exhibit 2D).  Such a history does not help the claimant's credibility when she alleges, as [s]he does not, that she cannot work at all.

[R.  520–523.]

### *Discussion*

The undersigned concludes that the ALJ conducted the proper credibility analysis and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible.  Contrary to Plaintiff's allegations of error, the ALJ specifically conducted the two-step analysis required under the regulations.  The ALJ first notes that he found "the Plaintiff's medically determinable impairments could possibly cause the alleged symptoms."  [R. 520.]  The ALJ then proceeded to evaluate multiple points of evidence to determine whether Plaintiff's claims appeared credible.  [R. 520–25.]  The Court notes that Plaintiff's allegations of error with respect to the ALJ's credibility analysis are more disagreements with the ALJ's conclusion rather than valid objections to the ALJ's analysis.  Such disagreements are not a basis for the Court to overturn the ALJ's well-reasoned findings.

22

Plaintiff has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law.  *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); *Mickle v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).  Although Plaintiff challenges the ALJ's consideration of an inconsistent work history, delayed surgery, and multiple requests for plastic surgery, the ALJ properly took these issues into consideration in determining Plaintiff's credibility.  *See, e.g,* SSR 96–7p (finding that a credibility assessment "must be based on consideration of all the evidence in the case record," which "includes, but is not limited to" a claimant's "prior work record and efforts to work").  The ALJ expressly considered Plaintiff's activities of daily living, but also considered inconsistencies between her testimony and the record as well as the lack of objective medical evidence to support the alleged severity of her impairments. [R. 520–23.] Although Plaintiff goes to extreme lengths to show that Plaintiff's subsequent hernia surgeries are proof of disability during the relevant period, the ALJ explained his conclusion to the contrary and supported his conclusion with substantial evidence.  *See Craig*, 76 F.3d

at 589) (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). When an ALJ has given specific, legitimate reasons for disbelieving a plaintiff's testimony, the reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review." *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

Based on the above, the Court is unable to find that the ALJ's decision is not supported by substantial evidence. The ALJ explained the basis for his credibility findings in accordance with the regulations, and the Plaintiff failed to show that the ALJ's findings were contrary to the record evidence or the law. Accordingly, the decision of the Commissioner should not be reversed on this ground.

**RFC Analysis**

Plaintiff argues that, because Plaintiff's hernia condition was found to be non-severe in a prior decision and severe in this decision, the ALJ found that Plaintiff's condition greatly worsened after the prior decision date. [Doc. 14 at 19.] Thus, Plaintiff contends the ALJ erred because he assessed RFC before he evaluated Plaintiff's symptoms. [*Id.*]

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means

24

> 8 hours a day, for 5 days a week, or an equivalent work
> schedule . . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and
footnotes omitted).  The RFC assessment must first identify the claimant's functional
limitations or restrictions and assess his or her work-related abilities on a
function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20
C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may
RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,
heavy, and very heavy. *Id.*

> Additionally, the Administration has determined that in assessing RFC, the ALJ

> > must consider only limitations and restrictions attributable to
> > medically determinable impairments.  It is incorrect to find that
> > [a claimant] has limitations or restrictions beyond those caused
> > by his or her medical impairment(s) including any related
> > symptoms, such as pain, due to factors such as age or height,
> > or whether the [claimant] had ever engaged in certain activities
> > in his or her past relevant work (e.g., lifting heavy weights.)
> > Age and body habitus (i.e., natural body build, physique,
> > constitution, size, and weight, insofar as they are unrelated to
> > the [claimant]'s medically determinable impairment(s) and
> > related symptoms) are not factors in assessing RFC . . . .

*Id*. at 34,476.  To assess a claimant's RFC, the ALJ must consider all relevant evidence
in the record, including medical history, medical signs, laboratory findings, lay evidence,
and medical source statements.  *Id*. at 34,477.  SSR 96–8p specifically states, "The RFC
assessment must always consider and address medical source opinions.  If the RFC
assessment conflicts with an opinion from a medical source, the adjudicator must explain
why the opinion was not adopted ."  *Id*. at 34,478.  Thus, an ALJ's RFC assessment will

necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

### The ALJ's RFC Findings

As previously stated, the ALJ found Plaintiff capable of sedentary work with limitations of lifting and carrying up to ten pounds occasionally and lesser amounts frequently; sitting for at least six hours in an eight-hour day, with no standing and/or walking over an aggregate of two hours in an eight-hour workday; no pushing or pulling over ten pounds with the bilateral upper extremities; occasional stooping, crouching, kneeling, balancing, and climbing stairs and ramps; and no crawling or climbing ladders, ropes, or scaffolds.  [R. 519.]

### Discussion

After a review of the decision and the record in this case, the undersigned cannot find that the ALJ conducted an improper RFC analysis or that the decision otherwise reflects a failure to consider the effect of Plaintiff's impairments on her ability to work.  To the contrary, the ALJ properly considered Plaintiff's medical records, including findings during the relevant period that Plaintiff's examination were unremarkable, she obtained routine refills of medication, and her abdominal symptoms were stable.   [R. 521.] Additionally, the ALJ noted that physical and clinical findings during the relevant period failed to note any muscle atrophy, which would be expected with Plaintiff's alleged level of inactivity.  [R. 522]; *see Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008) (finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted claimant's claims of disabling physical impairment); *Haynes v. Astrue*, Civil

26

Action No. 1:09-cv-484-TFM, 2010 WL 3377715, at *3 (M.D. Ala. Aug. 25, 2010) ("Muscle

atrophy is an objective medical indication of pain and lack thereof in [claimant] militates

against the conclusion that she suffers from pain which precludes her from substantial

gainful activity.").  The ALJ, taking into consideration all the evidence of record, explained

his RFC findings as follows:

> In sum, the above residual functional capacity assessment is supported by the overall evidence of record.  In limiting the claimant to work at the sedentary exertional level, I considered the combination of the claimant's history of recurrent hernias and abdominal surgery, including the resulting abdominal pain, along with slight obesity.  The sedentary level accommodated the limitations associated with these conditions.   Moreover, the additional limitations on pushing/pulling and postural movements avoid exacerbation of pain.   This residual functional capacity adequately accounts for the claimant's subjective reports of pain.  It is also supported by the general lack of medical treatment or reports of severe abdominal pain to treating physicians during the relevant period of alleged disability.  Although the record failed to adequate support that the claimant had a recurrent hernia that required surgical intervention during the relevant period of alleged disability, the sedentary exertional level accounts for the restrictions on lifting the claimant would have from previous complicated hernia surgeries.   In addition, the record failed to reflect any limitations in function by any treating medical source that were more restrictive than the above residual functional capacity.  The record also indicated some inconsistencies between the medical evidence and the claimant's testimony.  Overall, the above residual functional capacity was well supported by the entirety of the evidence.

[R. 524–25.]  Plaintiff has failed to direct to the Court to any evidence that the ALJ failed

to taken into account and/or evidence of any limitation not considered by the ALJ.[7]

Accordingly, the decision of the Commissioner should not be reversed on this ground.

**Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Elton who found

that Plaintiff was disabled.  [Doc. 14 at 22.]

---

[7]Additionally, although Plaintiff contends that because an ALJ found Plaintiff's hernia impairment non-severe in a March 25, 2004 decision and severe in subsequent decisions, the ALJ found that Plaintiff's impairment worsened during the relevant period [Doc. 14 at 2], Plaintiff provided additional medical evidence in her subsequent filings which a subsequent ALJ had to take into consideration, e.g., medical records of two surgeries in August 2004 and August 2005, the opinion of Dr. Donald Elton, and about 84 more pages of "hernia stuff that was relevant that wasn't in before" [R. 531].  Further, the ALJ declined to adopt the 2004 decision of the previous ALJ explaining as follows:

> Pursuant to Albright v. SSA, 174 F.3d 473 (4th Cir. 1999), I have considered the prior findings of Administrative Law Judge Berry in the previous decision finding no severe impairment. In weighing the prior decision, I considered whether a fact upon which the prior finding was based was subject to change with the passage of time, such as a fact relating to the severity of the claimant's medical condition; the likelihood of such a change, considering the length of time that has elapsed between the previously adjudicated period and the period being adjudicated in this subsequent claim; and the extent that the evidence not considered in the previous final decision provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.  I note that a different period of time was under consideration for the current application and new and material evidence was received.  Therefore, the prior decision is not adopted.

[R. 524.]  Thus, that the ALJ found Plaintiff's hernia impairment severe after the initial findings in 2004 merely means the ALJ took more evidence into consideration, not that the condition worsened.  Contrary to Plaintiff's assertion, the ALJ never concluded that Plaintiff's condition worsened after the date last insured.

The legal standard which applies to the weighing of medical opinions is contained in 20 C.F.R. § 404.1527.  The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

### *The ALJ's Weighing of Medical Evidence*

The ALJ weighed the medical evidence, including Dr. Elton's opinion, as follows:

> I have considered the opinion of Dr. Donald Elton.  The report filled out by Dr. Elton endorsed an opinion that the claimant's hernias were recurrent during the period of alleged disability, but could not be addressed secondary to a breast abscess. Dr. Elton indicated that the claimant's hernia at the time of the surgery was probably unchanged from the period relevant to alleged disability.  Dr. Elton also noted that the claimant was not capable of lifting any weight on a regular and consistent basis (Exhibit 20F).  However, in considering this opinion, I note that Dr. Elton was neither an examining nor treating physician.  In fact, the claimant's representative reported at the hearing that he had paid Dr. Elton for his review of the records. Moreover, Dr. Elton reported that he was a board certified in Pulmonary Diseases (Exhibit 20F/2).  There was no indication that Dr. Elton had any experience or qualifications relevant to general surgery or hernia repair.  Dr. Elton performed substantially the same function as the state agency medical

consultants, although without the benefit of the entirety of the record or the experience in record review. I note that there is nothing improper about the representative purchasing such a review and opinion. However, in assigning weight, I must also consider the primary purpose of the review and opinion, in developing evidence specifically in support of an application of disability, and whether the nature of the request and source of the fee would affect the independent judgment of the physician. Considering Dr. Elton's specialty in no way involved abdominal surgery or hernia treatment, he did not examine the claimant, and he only reviewed a small number of treatment records provided by the representative, I give very little weight to this opinion.

Moreover, the record failed to reflect any medical source statement or restrictions on functioning from the claimant's treating general surgeon, Dr. Phillips, which would necessarily been accorded more weight than Dr. Elton's above discussed opinion.

The record also reflected a medical opinion from a consultative examiner, Conigliaro Jones, M.D. (Exhibits 17F; 18F). Dr. Jones reported that the claimant could lift and carry up to ten pounds occasionally, sit for four hours in an eight-hour day, and stand and walk for two hours each in an eight-hour day (Exhibit 18F/1-2). Dr. Jones noted that the claimant would require occasional limits on pushing and pulling, with some occasional restrictions on the operation of foot controls and postural movements (Exhibit 18F/3-4). The claimant was also limited in exposure to environmental conditions, including unprotected heights (Exhibit 18F/5). These opinions were based on physical and clinical findings from the consultative examination performed on July 30, 2013 (Exhibit 17F). I note that this examination was five years after the date last insured. The medical evidence indicated a number of intervening events and procedures in 2005 and 2006, which would likely contribute to additional functional limitations. Therefore, this opinion is accorded limited weight for the brief period during which the claimant must establish disability. However, I did incorporate a number of these exertional limitations into the residual functional capacity in reducing the claimant to sedentary work.

[R. 523–524.]

*Discussion*

Plaintiff argues the ALJ improperly rejected Dr. Elton's opinion that Plaintiff is disabled because he "only reviewed a small number of treatment records provided by" Plaintiff's counsel. [Doc. 14 at 23.] Plaintiff also contends she tried to get the ALJ to send Dr. Phillips a questionnaire similar to the one completed by Dr. Elton, but was unsuccessful. [*Id*.]

It is well established in the Fourth Circuit that an ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook*, 783 F.2d at 1173. The key consideration is "whether the record contained sufficient medical evidence for the ALJ to make an informed decision" regarding the claimant's impairment. *Craft v. Apfel*, No. 97-2551, 1998 WL 702296 (4th Cir. 1998). The ALJ will make "every reasonable effort to obtain evidence from your own medical sources." 20 C.F.R. § 416.912. However, "[he] is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Bell v. Chater*, No. 95-cv-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (unpublished table decision) *(*quoting *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994)) (alteration in *Bell*).

In this instance, the Court finds no basis for concluding that the record was not adequately developed, and/or that the ALJ was required to obtain additional information from Dr. Phillips regarding limitations on Plaintiff's ability to work. The ALJ expressly found that records from Plaintiff's treating surgeon failed to restrict Plaintiff's functioning after surgery. [R. 524.] The ALJ also adequately explained his reasoning for giving little weight

31

to Dr. Elton's opinion and addressed the factors outlined in *Johnson*. Further, Dr. Elton's opinion that Plaintiff was unable to sustain a full-time job on a reliable and consistent basis does not qualify as a medical opinion and, therefore, is not entitled to controlling weight or any special significance under the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1527(d) (explaining that a medical source's opinion that a claimant is "disabled" or "unable to work" is not a "medical opinion," but rather is an administrative finding on an issue reserved to the Commissioner); SSR 96–5p, 1996 WL 374183, at *5 (stating that opinions on issues reserved to the Commissioner "can never be entitled to controlling weight or given special significance"). Accordingly, the decision of the Commissioner should not be reversed on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 11, 2016
Greenville, South Carolina